HARRIET ELLIOTT, Respondent, *v.* MICHAEL WELBY ET AL., Appellants.

### November 28, 1882.

1. WILLS — BURDEN OF PROOF.— In a proceeding to contest a will the burden is on the defendant to establish a valid will notwithstanding it may have been probated.
2. —— How SIGNED.— A will must be signed by the testator or by some one for him in his presence and by his direction.

3. —— JURY QUESTION.— "The question of will or no will " is for the jury
under proper instructions from the court.

4. —— ATTESTING WITNESSES.— Attesting witnesses must subscribe their
names in the presence and at the request of the testator.

5. —— The affidavits of probate must be made and signed by the subscrib-
ing witnesses.

6. —— AFFIDAVITS OF PROBATE.— Affidavits of probate are entitled to only
such weight in establishing the will as the jury may think they deserve.

7. —— TESTATOR.— A testator must be of sufficiently sound mind to under-
stand to whom the bequests are made, and the extent of his property.

8. —— UNDUE INFLUENCE.— Undue influence is that degree of influence which
causes the testator to do that which he would not otherwise do.

9. —— Influence which substitutes the intention of another for that of the
testator avoids a will.

10. —— RIGHT OF DISPOSITION.— A person has the right to dispose of his
property to the exclusion of his heirs.

11. —— BENEFICIARIES ARE COMPETENT WITNESSES.— Beneficiaries under a
will are competent as witnesses to establish the will.

12. —— INSTRUCTIONS.— An instruction not based upon substantial evidence
in the cause should be refused.

APPEAL from the St. Louis Circuit Court, ADAMS, J.
*Affirmed*.

ALEX. J. P. GARISCHE, for the appellants : The bene-
ficiaries under this will were not competent to prove
the will.— *Hoddix* v. *Hoddix*, 5 Litt. 202 ; *Scales* v.
*Desha*, 16 Ala. 303. The presumption of sanity prevails
even in the probate of a will.—*McClintock* v. *Curd*, 32
Mo. 421 ; 1 Redf. on Wills, 40 ; 1 Jar. on Wills, 104, 111 ;
*McDaniel* v. *Crosby*, 19 Ark. 545 ; *Sables* v. *Houston*, 33
Ala. 563 ; *Thompson* v. *Kymer*, 65 Pa. St. 368.

JOSEPH T. TATUM, for the respondent : Beneficiaries under
a will are thereby rendered incompetent as witnesses to estab-
lish the will.— *Garvin* v. *Williams*, 50 Mo. 206 ; *Gamasche* v.
*Gambs*, 52 Mo. 287 ; *Harris* v. *Hays*, 53 Mo. 90. The burden
of proof is on the defendant, in a proceeding contesting a will,
to establish a valid will.— *Harvey* v. *Sullens*, 56 Mo. 372 ;
*Lamb* v. *Helm*, 56 Mo. 420 ; *Benoist* v. *Murrin*, 58 Mo. 307.

BAKEWELL, J., delivered the opinion of the court.

This is a proceeding to contest a will. The plaintiff al-

leges that she is a sister of John L. Mills, whose name is affixed to the instrument which was admitted to probate in the probate court as his will. The beneficiaries under the alleged will, and the other heirs at law of John L. Mills, are made defendants.

The jury found against the will, and there was a judgment accordingly.

On the trial, it was admitted that the witnesses to the will were dead, and that their attendance could not be procured. Defendants then read in evidence the will and certificate of probate.

The will bequeaths to Michael Welby, $150, and the remainder of the estate, after paying funeral expenses, to the orphans in the St. Louis Hospital Association, and states that the money to be distributed under the will is $1,300, represented by a note of one Mulford, payable to the testator and bearing six per cent interest. The signature is by the testator's mark. The witnesses are Daniel J. Sullivan, Martin Gavin, and John Cahalan. The will was proved before the clerk of the probate court of St. Louis County, by two persons who declare themselves to be subscribing witnesses, Sullivan and Cahalan. In the transcript the name " Cahalan " affixed to the affidavit before the probate clerk, is not spelled exactly as in the signature of the witness attached to the will.

Plaintiff introduced the depositions of Perry Pool and Theresa Fang, to the effect that the father and mother of the alleged testator died before him ; that he left a brother who went South, who was not heard of for thirty years, and who is supposed to be dead ; that at the time of his death, the alleged testator had three living sisters, that is to say, the plaintiff who is a widow, Sarah Mills, a spinster, and Elizabeth, wife of Francis Lilly, who are all made defendants in this action ; that Louisa Mills, a sister of the alleged testator, died before him, without issue ; that Mary Anderson, another sister, died before the testator, leaving five children, of whom one is dead, and the other four are the

defendants Elizabeth Brown, Virginia Corbier, and James and Amanda Anderson. These depositions also tend to show that the alleged testator was kind and attentive to his sisters. The deposition of Sarah Mills was also introduced, and merely went to corroborate the statements in the other depositions, and to show that the deceased frequently wrote to his sister. These depositions were all objected to, on the ground that, at the time they were taken, the witnesses were incompetent, as being parties in interest or parties to the record.

The other evidence is not set out in full. But the bill of exceptions gives the substance of it in the following language : —

"Plaintiff then introduced evidence of the fact that testator was of unsound mind at the time the will was executed ; also, that testator was not a Catholic, and had been unwilling to go to the hospital; and had been there but a few days before he died under the influence of opiates ; all the while he was affectionate to his relatives, and had expressed intentions of leaving them what he had; had lived in a room in a public building ; could write a good hand. The estate consisted of money in bank, and personal property of (sic) $4,000. The will was written by Sullivan; and the other witnesses were employees or patients at the hospital. Sullivan, who was a patient, wrote not only the name of testator, but that of the witness Gavin, who could not write ; and the name of Sullivan in the probate was of a different handwriting to that of Sullivan as witness to the will. Defendant then offered evidence in rebuttal, and rested."

The following instructions were given for the plaintiff : —

"1. The jury are instructed that the burden of proof in this cause is upon the defendants : that is to say, the law does not require the plaintiff to prove that John L. Mills did *not* make a will, but the defendants are required to establish by competent evidence to the satisfaction of the

jury that the paper read as being the will of said Mills is the valid will of said Mills.

" 2. The court instructs the jury, that unless they believe from the evidence that the paper purporting to be the will of John L. Mills was signed by him or by some person in his presence by his direction, then the jury must find that said paper is not a valid will.

" 3. The court instructs the jury, that unless they believe from the evidence that the paper purporting to be the will of John L. Mills was attested or witnessed by two witnesses subscribing their names thereto in his presence, and that the said Mills was at the time of such attesting of a mind sufficiently sound to enable him to understand and know, and that he did understand and know, that such witnesses were attesting said paper, then the jury must find that such paper is not a valid will.

" 4. The jury are instructed that unless they believe from the evidence that the affidavits of probate to the paper offered in evidence as the will of John L. Mills were made and signed by the same identical persons whose names are appended to said paper as witnesses to the purported will, the jury must find that said paper is not a valid will.

" 5. The jury are instructed that the admission by the clerk of the probate court of the paper read in evidence as the will of John L. Mills does not in this proceeding in the least tend to establish or prove said paper to be the will of said Mills, but the burden rests, notwithstanding the reception and filing of said paper in the probate court, upon the defendants who offer said paper in this court, to prove by evidence to the satisfaction of the jury that said paper is a valid and lawful will, executed by said Mills while in possession of testamentary capacity and of a sound and disposing mind and memory capable of remembering his property and effects and of what they consisted, and the persons who would naturally and reasonably come within the range of his bounty ; and while the jury may consider the

affidavits of those subscribing before the clerk of the probate court as having witnessed said paper, which affidavits have been read in evidence at this trial, yet they will give only such weight to the said affidavits or proof as the jury may think they deserve ; and in order to give said affidavits or proof taken by the clerk of the probate court any weight whatever, the jury must believe from the evidence that the persons who attested the said paper before the clerk of the probate court were identically the same persons who are purported to have signed said paper as witnesses in the presence of the said John L. Mills.

" 6. The court instructs the jury, that unless they believe from the evidence that John L. Mills, at the time of the alleged execution of the paper purporting to be his will, was of a mind and memory sufficiently sound and retentive to enable him to know and understand the business in which he was then engaged, and the elements of the will, that is, the nature and extent of his property and the persons to whom he was about to bequeath it, then the jury must find that said paper is not a valid will, even though the jury should believe from the evidence that said Mills directed and authorized the writing of said paper, and affixed his mark thereto.

" 7. The jury are instructed that the weakness or unsoundness of mind and memory sufficient to invalidate a purported will, does not need to be so great that the testator is unable to know that he is making a will, but it is enough if he be in such mental condition at the time that he does not remember and comprehend the nature and extent of his property, and of what it consists, and of knowing what persons are intended to be provided for by the will.

" 8. The jury are instructed that undue influence operating on the mind of a testator avoids a will; and if the jury believe, from all the facts and circumstances detailed in evidence connected with the condition of body and mind, and the surroundings of said Mills at the time the paper

offered in evidence as his will purports to have been made; that said paper would not have been so made by him, but for undue influence exercised over him by some agent, servant, or employee of the Hospital Association, or other persons connected therewith, then the jury must find that said paper is not a valid will."

The following instructions were given at the instance of defendants Welby and the Hospital Association: —

" 9. The jury are instructed that if they believe from the evidence that the instrument proposed as a will of John L. Mills was by him signed in the presence of two witnesses, Daniel J. Sullivan and John Cahalan, who in his presence and at his request, subscribed their names as witnesses thereto; that at the time of his subscription to said instrument said Mills declared it to be his last will and testament, and at the time of such subscription and declaration he was of sound and disposing mind, then the jury will find it to be the will of the said John L. Mills.

" 10. The court instructs the jury, that a party has the right to dispose of his property by will as he chooses, even to the entire exclusion of those who, but for the will, would be the heirs of his estate; and the jury are not to consider whether the disposition made by the testator is appropriate or inappropriate, but simply whether the paper propounded as his will be or be not his last will and testament.

" 11. The jury are instructed that testamentary capacity or possession of sufficient mind to make a will, is like the capacity to attend to his own affairs, if his bodily health permitted his attention to them. No man who is competent mentally to transact his ordinary business can be pronounced incapable of making a will, and unless the jury believe from the evidence that John L. Mills was, at the time of making his will, of mind so unsound that he was incapable of managing his affairs, they must find that the paper produced is his will, provided always that they believe that his signature and the signatures of the subscrib-

ing witnesses are genuine, and that the matters stated by the witnesses in the certificate of attestation are true, and that it was not obtained from him by undue influence exercised upon him at the time of its execution.

" 12. On the part of the defendants the court instructs the jury, that the alleged will of John L. Mills, deceased, is not invalid for undue influence, unless the jury shall find from the evidence that the person or persons charged with procuring the same exerted over him such government and control as effectually destroyed his free and voluntary action, and caused him, in making it, to substitute the will and intention of such person or persons in place of his own.

" 13. The jury are instructed that the law does not annul a will simply because the testator gives an incorrect statement of the estate, and the proof upon this subject is admitted only to be weighed in connection with other facts in evidence, whether the testator at the time of the execution of the will was of a mind so unsound as to be incapable of making a will.

" 14. The court instructs the jury, that it being admitted that the subscribing witnesses to the will are either dead or are not to be found, the evidence of the witnesses as taken at the probate thereof, is under the law competent to be introduced at this trial in support of the will, and for the jury to give to it such weight as they think it deserves."

The following instructions were prayed by defendants Welby and the St. Louis Hospital Association, and were refused : —

" 15. If the jury believe from the evidence that the deceased during his illness was delirious or subject to fits of stupor, but with lucid intervals, then the presumption is, in the absence of any evidence upon the point, that the will was made when in such lucid moment, and the burden of proof in this respect devolves upon the plaintiff.

"16. The jury are instructed that there is no evidence before them to justify a verdict that the will was obtained by undue influence.

"17. The court instructs the jury, that until the contrary be shown, every man is presumed to be sane."

Counsel for appellant confines himself to two points, the refusal of instructions and the admission of the depositions, which, he says, were suppressed at the time they were taken but permitted by the court to be read, because, since their suppression, the disability of the witnesses had been removed by a later statute.

As no complaint is made of the instructions given, we will notice them only to say that we do not perceive that they are fairly objectionable, unless it be that they are too long, a fault to which appellants seem to have contributed.

The refusal of instruction No. 15 can be no ground for reversing the case. It does not appear that there was evidence that deceased was delirious or subject to fits of stupor with lucid intervals; and, as it does not appear that there was testimony that deceased was of unsound mind when the will was executed, it would have been simply misleading to tell the jury that, in the absence of any evidence upon the point that the will was made when in such lucid moment, it is to be presumed that it was made in a lucid interval. In the case of a will made upon a death-bed, and shortly before death, where stupor from drugs or delirium is shown, we know of no presumption that the will was made during a lucid interval where such intervals are shown to have existed.

As to the refusal of instruction No. 16, it is clear that the case was not one to warrant the court in taking the question of undue influence from the jury. The will was one in which the nearest relatives of the dying man were passed over for strangers, the principal beneficiaries being the orphans in a hospital by whose patients and servants he was surrounded, all of the witnesses to the will and the

man who wrote it being employees or patients of the institution.   The matter was for the jury.   As to this, we need not repeat what has been said in *Muller* v. *St. Louis Hospital Association* (5 Mo. App. 390; *s. c.* 73 Mo. 242).

The instruction that, until the contrary is proved, every man is presumed to be sane, was a mere abstract proposition of law, and the court was not bound to give it.   The jury were expressly told that they should find for the will on the question of sanity, unless it was shown by the evidence that Mills, at the time of making the will, was of mind so unsound that he was incapable of managing his affairs.

The objection that the witnesses examined by depositions were incompetent at the time the depositions were taken, as parties in interest and parties to the record, does not seem to be supported by anything in the record. No date appears from which we can see when any of the depositions were taken.   The witnesses were all competent when their depositions were read.   There is nothing in the record to support the statement of counsel that the depositions were once suppressed.   It does not appear that the witnesses Root and Fang were parties to the record or parties in interest; and, as to Mills, there is nothing tending to show that her deposition was taken at a time when she was laboring under a disability since removed by statute, as counsel for appellant claims.   The provision that no person shall be disqualified as a witness in any civil proceeding by reason of his interest in the event of the same as a party (Rev. Stats., sect. 4010), appears in the revision of 1865, and the present action was not begun until 1867. Beneficiaries under a will are competent witnesses to establish it.   *Gamache* v. *Gambs*, 52 Mo. 287.

In the present case, according to the established rule in this state, the burden of proof throughout rested upon defendants, who were endeavoring to establish the will.   The plaintiffs did not admit that the alleged testator was of

sound and disposing mind, but expressiy denied this in their petition.   It was a point in issue, to be established by the defendants who propounded the will, and the burden was not shifted by the introduction of the sworn attestation to the will before the clerk of the probate court at the time it was proved there.   *Benoist* v. *Murrin*, 58 Mo. 322.   If, as counsel for appellants contends, the general presumption of sanity applicable to contracts is to be applied to wills, that does not change the burden of proof, and is not inconsistent with the directions given to the jury in the fifth instruction for plaintiff.   *Crowningshield* v. *Crowningshield*, 2 Gray, 526 ; *Delafield* v. *Parrish*, 25 N. Y. 9.   If the general presumption of sanity.is to be said to exist at all in respect to wills, such a presumption, that men are sane, may stand instead of proof, and make out a *prima facie* case, but it does not change the burden of proof.   The party whose case requires proof of the fact, has the burden of proof.

The judgment is affirmed.   All the judges concur.